Portia WILLIAMS, Plaintiff,

v.

The RED BANK BOARD OF EDUCATION, Joan D. Abrams, Individually and as Superintendent of the Red Bank School District, Catherine Cadman, Individually and in her official capacity, Richard T. Doherty, Individually and in his official capacity, Michael S. Ellegood, Individually and in his official capacity, Frances H. Kingle, Individually and in her official capacity, Ronald D. Sachs, Individually and in his official capacity, Marcelle Seruby, Individually and in her official capacity, Dorothy Setaro, Individually and in her official capacity, Stephen M. Popper, Individually and in his official capacity, Fred G. Burke, Commissioner of Education of the State of New Jersey, in his official capacity, Defendants.

Civ. A. No. 80–2176.

United States District Court,
D. New Jersey.

Dec. 22, 1980.

**1368**

Arnold M. Mellk, William A. Fead, Greenberg & Mellk, Trenton, N. J., for plaintiff.

Jaynee LaVecchia, Deputy Atty. Gen., State of N. J., Trenton, N. J., for defendants, Commissioner Burke.

William J. Prout, Jr., Lum, Biunno & Tompkins, Newark, N. J., for all other defendants with the exception of defendant, Seruby.

OPINION

DEBEVOISE, District Judge.

Defendants' motion to dismiss the complaint in this action raises the question under what circumstances may a federal court enjoin pending state administrative proceedings. Specifically, it involves the issue whether the federal court may enjoin tenure termination proceedings presently before the Commissioner of Education where it is alleged that these proceedings were instituted as a direct reaction to plaintiff's exercise of her First Amendment rights.

Plaintiff is a first grade teacher employed by the defendant Red Bank Board of Education. On or about May 6, 1980, defendant Abrams, Superintendent of the Red Bank school district, brought charges of conduct unbecoming a teacher against the plaintiff. Abrams charged that the plaintiff had made certain remarks, allegedly racist and anti-semitic, at a public meeting of the defendant Board of Education; that the plaintiff had struck pupils in her class with a ruler, and that she had humiliated one of her students in front of the entire class on several occasions by questioning his cleanliness and health habits.

On June 3, 1980, the defendant Board of Education certified the written charges to defendant Commissioner of Education, N.J.S.A. 18A:6–11, and suspended plaintiff from her teaching duties *with pay* pending resolution of the charges by the Commissioner, N.J.S.A. 18A:6–14.

The Commissioner has assigned the tenure charges to the New Jersey Office of Administrative Law for the holding of a plenary hearing, which will include the right to counsel, the right to present witnesses, and the full right of cross-examination. N.J.S.A. 52:14B–9 and –10; N.J.S.A. 52:14F–5(n). After the Administrative Law Judge renders a report, the Commissioner will make a final decision. From that decision, the plaintiff has the right of appeal to the New Jersey Department of Education, N.J.S.A. 18A:6–27, and a further right of appeal to the Superior Court of New Jersey, Appellate Division, R. 2:2–3(a).

Following the referral of the tenure termination charges to the Commissioner, plaintiff instituted this suit under 42 U.S.C. § 1983, contending that the charges were brought as "a direct reaction to the exercise of her free speech and her right to petition the government for redress of grievances". By way of relief, plaintiff seeks a declaration that the prosecution of the tenure termination proceedings is in violation of her First and Fourteenth Amendment rights, as well as the withdrawal and dismissal of the pending tenure charges and the removal of any references to the charges from her personnel file. Plaintiff also seeks compensatory and punitive damages, costs of suit and reasonable attorneys' fees.

Defendants urge that this action be dismissed as a matter of comity and in recognition of principles of federalism, since there are pending state proceedings in which the issues raised can be resolved, relying on *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*Younger* counsels federal court abstention when there is a pending *criminal* prosecution and the absence of great and immediate irreparable harm to the federal plain-

tiff. *Younger* permits intervention only in those situations where the state proceeding is motivated by a desire to harass or is initiated in bad faith, or where the challenged statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Id.* at 53–54, 91 S.Ct. at 754–55, *citing Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941). The decision reflects both the traditional doctrine that a court of equity should stay its hand when a movant has an adequate remedy at law and

> the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. *Id.* at 44, 91 S.Ct. at 750.

The line of cases which followed *Younger* has extended the doctrine to pending civil proceedings in which important state interests are involved and the state proceedings afford an adequate opportunity to raise the federal claims. *See, Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). As noted in *Moore v. Sims:*

> [the abstention] policy was first articulated with reference to state criminal proceedings, but as we recognized in *Huffman v. Pursue, Ltd.,* 420 U.S. 592 [95 S.Ct. 1200, 43 L.Ed.2d 482] (1975), the basic concern—that threat to our federal system posed by displacement of state courts by those of the National Government—is also fully applicable to civil proceedings in which important state interests are involved. *Id.,* 442 U.S. at 423, 99 S.Ct. at 2377.

Plaintiff argues that the doctrine of abstention is not applicable in the present case because: (i) the state interest in the tenure termination proceeding is not sufficiently strong; (ii) there is no on-going state *judicial* proceeding; (iii) the state proceeding was instituted in bad faith and for the purpose of harassing the federal plaintiff, and (iv) the state administrative forum is inadequate to decide the plaintiff's federal claims.

### (i) *The State's Interest:*

The state's interest in the adjudication of the charges against plaintiff is sufficiently weighty to require federal abstention.

The Supreme Court has repeatedly recognized that the state has a great interest in regulating public education. *See, Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Pierce v. Society of Sisters,* 286 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

New Jersey has established, in compliance with the state constitutional mandate of a thorough and efficient public education, an extensive regulatory scheme by which charges against a tenured teacher may be brought, initially before the Commissioner of Education and subsequently before the Appellate Division of the New Jersey Superior Court, N.J.S.A. 18A:6–10, *et seq.* These regulations, which contain ample procedural safeguards to insure the teacher's interest in obtaining a fair hearing, demonstrate the significance of the state's interest in the regulation of public education. If this Court were to grant the relief requested by the federal plaintiff, that is, enjoining the prosecution of the tenure termination proceeding and declaring it to be in violation of plaintiff's First Amendment rights, such action would clearly interfere with the state's attempt to forward its interest in education.

Moreover, the fact that the state itself is not a party to the administrative proceeding does not suggest that the state's interest is any less significant. Although the

state is not a named party, the state is, in *fact, involved by the required appearance of* the Board of Education, N.J.S.A. 18A:6–10; N.J.S.A. 18A:6–17, and by the Commissioner's participation. *Cf. Rosko v. Pagano,* 466 F.Supp. 1364, 1371 (D.N.J.1979) (where the Court deemed the state to be sufficiently involved in an administrative disciplinary hearing to require federal abstention although the state was not a party in the proceedings).

Similarly, the state's inability to proceed criminally in the instant matter is immaterial. The key to abstention lies in the extent of the state's interest in the pending proceeding balanced with the threat to federal plaintiff's constitutional rights, *Moore v. Sims, supra,* not in whether the state may also bring a criminal proceeding. As already noted, the state's interest in the tenure termination proceeding is significant enough to require federal court abstention, and the fact that the state cannot prosecute criminal charges against the plaintiff does not weaken that interest. To allow this kind of suit has the potential for disruption of effective disciplining of teachers by school authorities. This action is unlike *New Jersey Ed. Ass'n v. Burke,* 579 F.2d 764 (3d Cir. 1978), *cert. den.,* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978), a suit instituted by a private party which had also instituted a state court action advancing the same claims. There, the issue was the validity of certain regulations adopted by the State Board of Education. Here, governmental officials are seeking to implement carefully drafted disciplinary plans which have long been in effect and which are an integral part of school administration.

(ii) *On-going Judicial Proceedings:*

■ The lack of pending state *judicial* proceedings does not make *Younger* abstention inapplicable. The case of *Gipson v. New Jersey Supreme Court,* 558 F.2d 701 (3d Cir. 1977), demonstrates that the on-going proceedings need not be pending in a state court provided ultimate resort to a court is contemplated. Here, plaintiff has

an appeal as of right to the Superior Court of New Jersey, Appellate Division, from an adverse determination by the New Jersey Department of Education. R. 2:2–3(a). Thus, *Younger* abstention principles may apply. *Cf. Geiger v. Jenkins,* 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971) (where the Court summarily affirmed the District Court's dismissal of an action seeking to enjoin on constitutional grounds a state Board of Medical Examiner's license revocation proceeding, by *citing Younger v. Harris, supra,* and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

(iii) *The Younger Exceptions:*

■ Plaintiff's action does not come within any of the well-established exceptions to the *Younger* doctrine. Plaintiff's complaint states that

> [t]he institution of the tenure termination proceedings against plaintiff is a direct reaction to her exercise of her right of free speech and her right to petition the government for redress of grievances. [Complaint, ¶ 11.]

> \*  \*  \*  \*  \*  \*

By prosecuting tenure charges against plaintiff, under color of the laws of the State of New Jersey, the defendants Abrams, the board and its individual members have arbitrarily and discriminatorily punished plaintiff for the exercise of her rights guaranteed by the First and Fourteenth Amendments of the United States Constitution and Article 1, Paragraphs 6 and 18 of the New Jersey Constitution. [Complaint, ¶ 12.]

These claims do not allege that the defendants instituted the tenure termination proceedings in bad faith or with the desire to harass the federal plaintiff. Rather, the claims merely state that tenure charges were a result of plaintiff's speech and that the tenure termination proceeding punishes the plaintiff. No mention of an impermissible motive is made. Accordingly, the bad faith and harassment exceptions to *Younger* do not apply here.

(iv) *The Adequacy of the State Forum*:

*Younger* abstention requires "an adequate opportunity to raise the constitutional claims" in the state proceedings. *Moore v. Sims, supra,* 442 U.S. at 430, 99 S.Ct. at 2381. Thus, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims". *Id.* at 426, 99 S.Ct. at 2378. It is undisputed that in the state tenure proceeding plaintiff had the opportunity to raise her constitutional claims, and that she did raise them, purporting to reserve her right to a federal court determination of the federal claims as prescribed by the Supreme Court in *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 415–17, 84 S.Ct. 461, 464–66, 11 L.Ed.2d 440 (1964) (a *Pullman* doctrine case). Moreover, plaintiff's opportunity to raise her federal claims is adequate, despite the fact that the state administrative forum may not be particularly as well-suited to decide First Amendment claims as a judicial tribunal, and cannot grant plaintiff the full relief sought.

Whether or not an administrative body can competently determine sensitive First Amendment issues, plaintiff's opportunity to raise her First Amendment claims in the state forum is adequate because she has an appeal as of right to the New Jersey Appellate Division which is a "forum competent to vindicate any constitutional objections". *Huffman v. Pursue, supra,* 420 U.S. at 604, 95 S.Ct. at 1208.

In addition, the fact that the state forum cannot grant plaintiff compensatory damages does not affect the adequacy of plaintiff's opportunity to raise her constitutional claims in the state proceedings because she may seek that relief in the federal court upon completion of the state proceedings. Unless the postponement of the relief sought gives rise to great and irreparable harm to the plaintiff, in which case the federal court should not abstain under *Younger* principles, the immediate entrance to a federal forum for the resolution of federal claims is a "luxury . . . quite costly in terms of the interests which *Younger* seeks to protect" and therefore should not be permitted. *Huffman v. Pursue, supra,* at 606, 95 S.Ct. at 1209. Once plaintiff's federal claims are ultimately decided by the state court, plaintiff is entitled to institute an action in a federal court, asserting her claims based upon alleged violation of her constitutional rights. She will be faced, of course, with the normal rules of *res judicata* and collateral estoppel. Ultimately, however, plaintiff will receive a federal forum for resolution of federal issues and the opportunity for the complete relief she seeks. Accordingly, plaintiff's opportunity to raise her federal claims in the state proceedings is an adequate opportunity at this time. Cf. *Rosko v. Pagano, supra.*

*Conclusion*:

Because there are pending tenure termination proceedings before the Commissioner of Education which involve important state interests, and there appears to be no great and immediate irreparable harm to the federal plaintiff, I conclude that this matter is appropriate for abstention under the *Younger* doctrine. Defendants' motion to dismiss is therefore granted.

Attorney for defendant Board of Education is to submit an appropriate order in conformity with this opinion.