514 F.2d 368
 75-1 USTC P 9402
 UNITED STATES of America, and Boyd W. Hemphill, Special
Agent of the Internal Revenue Service, Appellees,
v.
Jack McCARTHY, Vice President and Office Manager of Bar Mar
Warehousing Corp., and Bar Mar Warehousing Corp.,
Appellants.
 No. 74-1665
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 13, 1975.
Decided April 10, 1975.
 
 Donald J. Williamson, Oradell, N. J., for appellants.
 Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert E. Lindsay, William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellees; Jonathan L. Goldstein, U. S. Atty., of counsel.
 Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 This is an appeal from a final judgment of the district court, entered under 26 U.S.C. § 7604 (1970), ordering Jack McCarthy and Bar Mar Warehousing Corp., ("defendants") to produce certain books and records listed in an administrative summons issued pursuant to 26 U.S.C. § 7602 (1970) by Internal Revenue Service Special Agent Hemphill.[1]
 
 I. Factual Background
 
 2
 Defendants failed to comply with the Internal Revenue Service summons on August 14, 1973. Thereafter, the Internal Revenue Service and Agent Hemphill ("plaintiffs") initiated these proceedings to enforce the summons. Upon filing a complaint, plaintiffs obtained an Order to Show Cause. Defendants filed a Motion to Vacate the Order to Show Cause and upon the return date of the Order filed an answer which contained several counterclaims (the answer was later amended to construe these counterclaims as affirmative defenses).
 
 
 3
 In essence, plaintiffs' complaint, and an affidavit of Agent Hemphill attached to it, contained the following allegations: that Agent Hemphill had issued a summons requesting an appearance by an officer or agent of defendant-corporation for testimony and production of certain documents, that the materials sought were in the possession of defendants, that they were necessary to ascertain the correct tax liability of defendant-corporation for the years 1969 through 1972, and that defendants had failed to comply with the summons on its return date.
 
 
 4
 Defendants' responsive pleadings alleged, in pertinent part, that the summons should be held unenforceable because: (1) the material sought in the summons had previously been made available to the Service and was presumptively in the Service's possession; (2) in view of the Service's prior examination of the years in question and its prior access to the material sought in the summons, any further access would constitute a "second inspection" which, under 26 U.S.C. § 7605(b) (1970), might only be had after the Secretary or his delegate had notified defendant-corporation that an additional inspection was necessary; (3) no such notice had been sent defendants; (4) Agent Hemphill had been engaged in harassment of persons related to defendant corporation by business or personal ties in an apparent attempt to coerce defendants to waive "their constitutional and statutory rights; " and (5) the investigation was criminal in nature since it was being conducted by an agent in the IRS intelligence division, it being the function of that division to provide evidence for criminal prosecutions and not to ascertain tax liability.
 
 
 5
 On the return date of the Order to Show Cause, the district court heard oral argument on the Motion to Vacate. At that time counsel for defendants requested pretrial discovery. The court did not grant the request; moreover, despite the allegations by both parties which appear to have raised factual disputes, the court did not conduct an evidentiary hearing, ostensibly having concluded that the case could be decided as a matter of law.[2]
 
 
 6
 On April 14, 1974, by Letter Opinion, the district court denied defendants' Motion to Vacate the Order to Show Cause and granted final judgment to plaintiffs. An order enforcing the administrative summons was signed July 8, 1974. The order was stayed pending this appeal.
 
 
 7
 On appeal, defendants seek reversal of the district court's enforcement order on the grounds that the district court erred in denying them an evidentiary hearing and pretrial discovery since they had sufficiently brought into controversy the enforceability of the summons.
 
 
 8
 Plaintiffs' reply on appeal is basically that the district court correctly enforced the IRS summons where defendants "had made no showing that enforcement would constitute an abuse of the court's process."[3] Plaintiffs further contend that defendants failed to demonstrate the need for a hearing, that they had in fact waived any such hearing, and that they had failed to demonstrate criminal purpose, harassment, or that plaintiffs' access to defendant-corporation's books would constitute a "second inspection."
 
 II. Supreme Court Precedent
 
 9
 By failing to comply with the summons on or before its return date, defendants compelled plaintiffs to seek enforcement in the district court under 26 U.S.C. § 7604 (1970). Both Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1963) and United States v. Powell,379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), indicate that the taxpayer is entitled to a hearing prior to enforcement and contemplate that, in the course of this hearing, the taxpayer "may challenge the summons on any appropriate ground," Reisman, 375 U.S. at 449, 84 S.Ct. at 513; Powell,379 U.S. at 58, 85 S.Ct. 245. The purpose of the hearing, as was stated in Powell, is to prevent abuse of the court's process. The Court stated:
 
 
 10
 Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. Powell, 379 U.S. at 58, 85 S.Ct. at 255.
 
 
 11
 The Court indicated that the burden of demonstrating such an abuse of process is on the taxpayer.
 
 
 12
 Under Powell, however, the abuse of process issue is only reached after the government has made a preliminary showing in support of the summons. In Powell, the Supreme Court held that the government must show: (1) that the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose, (2) that the information sought is not already within the government's possession and (3) that the steps required by the Internal Revenue Code have been followed "in particular that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect." Powell, 379 U.S. at 58, 85 S.Ct. at 255.
 
 
 13
 But the Supreme Court in Powell did not indicate what form this "showing" by the government was to take or, indeed, what procedures were to govern in enforcement proceedings. Nor did the Powell decision give any guidance concerning the use of discovery in an enforcement proceeding.[4] Because we are remanding, and in view of the circumstances of this case, we believe it is appropriate to suggest procedural guidelines which we think would be of assistance to the district court in enforcement cases.
 
 
 14
 III. Procedure for Summons Enforcement Proceedings
 
 
 15
 Keeping in mind that Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970), held that the Federal Rules of Civil Procedure apply in summons enforcement proceedings, subject to appropriate limitation by the district court, we think the following would be generally acceptable procedure.
 
 
 16
 1. The Secretary or his delegate would file a complaint accompanied by an affidavit of the agent who issued the summons, seeking enforcement. The complaint should separately allege compliance with each of the requirements of the Powell test of enforceability. The affidavit should support these allegations.
 
 
 17
 2. Process on the complaint could be in the form of an order served on the person summoned fixing a deadline for filing any responsive pleading, albeit an informal pleading, together with an affidavit, and any motions, and directing that person to show cause at a date and time certain why an order should not be entered enforcing the administrative summons. The order should provide that unless the court determines otherwise, any motions and issues raised by the pleadings will be considered at the return date of the order to show cause. In addition, the order should state that only those issues raised in motions or brought into controversy by the responsive pleading and supported by affidavit will be considered at the return of the order and that any uncontested allegation in the complaint will be taken as admitted.
 
 
 18
 3. At the hearing on the order, the Secretary should be prepared to prove the allegations of the complaint that the summons complies with the Powell requirements. He should also be prepared to rebut any proper defenses asserted by the person summoned.
 
 
 19
 The person summoned should be prepared to produce any evidence rebutting the government's case and also to assume the burden as to affirmative issues raised by him for the purpose of demonstrating that enforcement of the summons would constitute an abuse of the court's process. After completion of the hearing, the district court in conformity with Fed.R.Civ.P. 52(a), should make the requisite findings of fact and conclusions of law.
 
 
 20
 4. Although the proceedings are of a summary nature,[5] if the district court concluded that it could not fairly decide the case on the record before it at the return of the order, it would be free to direct further proceedings, including discovery, if requested.
 
 
 21
 The procedure we suggest is merely advisory in cases other than the one before us. If our suggestion is accepted, in its present form or with appropriate modifications, the district courts should amend their local rules to establish uniform enforcement procedures pursuant to their authority under Rule 81(a)(3) of the Federal Rules of Civil Procedure to limit the application of the Rules.[6]
 
 
 22
 IV. Application of the Procedural Guidelines to the Present Case
 
 A. The Pleadings
 
 23
 As we have already stated, we read Powell to require that the plaintiffs plead, in order to establish a prima facie case for the enforceability of a summons: (1) that the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose; (2) that the information sought is not already within the government's possession, and (3) that the government has followed the procedural steps required by the Internal Revenue Code.
 
 
 24
 Plaintiffs' complaint in this case, together with the affidavit of Agent Hemphill, alleged only that the investigation was being conducted to establish the correct tax liability of defendant-corporation for certain years and that the information sought was necessary to assess the liability. Although these allegations appear sufficient to satisfy the first prong of the Powell test, they clearly fail to satisfy the second and third prongs. Thus, based on a strict reading of the complaint, plaintiffs failed to make out a prima facie case for enforcement. It is not necessary to decide whether to reverse on that ground alone because our ruling on the failure of the district court to conduct an evidentiary hearing requires reversal in any event.
 
 B. Right To a Hearing and Discovery
 
 25
 Although our proposed procedure for summons enforcement contemplates that provision for an evidentiary hearing be an integral part of the proceedings, implicit in our design is the realization that not every summons enforcement proceeding will require an evidentiary hearing. Thus, if the person summoned neither puts in issue allegations of the complaint nor raises proper affirmative defenses, no evidentiary hearing will be required; the matter can be decided on the pleadings. We proceed to consider whether defendants raised any issues requiring an evidentiary hearing.
 
 1. Criminal Purpose
 
 26
 We read defendants' answer to allege that the summons is unenforceable since it was issued for criminal purposes. The criminal purpose defense was recognized in Reisman, supra, where the Supreme Court held that a taxpayer may challenge an IRS summons on the grounds that the information sought is to be used in a criminal prosecution of the taxpayer.
 
 
 27
 However, since Reisman, several cases have held that the mere fact that a special agent has entered into an investigation or that the investigation is being conducted by the investigatory branch of the IRS is insufficient to demonstrate criminal purpose so as to defeat enforcement of a summons. Donaldson, supra ; United States v. Fisher, 500 F.2d 683 (3d Cir. 1974); United States v. Erdner, 422 F.2d 835 (3d Cir. 1970). See also Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). In addition, the Supreme Court has indicated that an IRS summons is enforceable "if it is issued in good faith and prior to a recommendation for criminal prosecution." Donaldson, supra, 400 U.S. at 536, 91 S.Ct. at 545.[7]
 
 
 28
 In claiming unenforceability on the grounds of criminal purpose, defendants place great emphasis on the fact that the investigation of defendant-corporation was being conducted by the IRS investigatory branch.[8] However, defendants have not alleged that a recommendation for criminal prosecution had been made prior to issuance of the summons. Indeed, plaintiffs have explicitly stated on the record that no such recommendation had been made. Thus, defendants' allegations were insufficient to bring this matter into controversy.
 
 2. Good faith absence of civil purpose
 
 29
 We next must consider whether defendants' allegations were sufficient to create a need for an evidentiary hearing on the issue as to whether the summons was issued "in good faith." In United States v. Wall Corp., 154 U.S.App.D.C. 309, 475 F.2d 893 (1972), the court, in passing on the enforceability of a summons, stated:
 
 
 30
 Our inquiry is not ended upon a determination that prosecution has neither been instigated nor recommended, since Donaldson also requires that a summons be issued "in good faith." Thus, if it can be shown that the investigating agent had already formed a firm purpose to recommend criminal prosecution even though he has not as yet made a formal recommendation, issuance of the summons would presumably be in bad faith. Similarly, if the civil liability were already determined, the summons would appear to be solely for a criminal purpose. Id. at 895.
 
 
 31
 In our case defendants allege that the IRS had conducted a previous examination of the years for which the Service now claims it is seeking to ascertain the correct tax liability. Subsequently, in a brief filed with the district court and in the argument of counsel for defendants before the court, it was further alleged that as a result of the prior civil investigation at least one return was filed and at least one delinquent assessment was made for the years currently under investigation.
 
 
 32
 Defendants apparently sought to imply by these allegations that defendant-corporation's tax liability for the years in question had previously been determined. We agree with Wall that a prior determination of defendant-corporation's civil tax liability for the years in question might be evidence that the current investigation was not being conducted in good faith as a civil investigation. However, we find that defendants' allegations were not sufficient to raise the possibility of bad faith in this respect. In particular, there is no allegation that the IRS had pursued all available civil remedies with respect to each of the years currently under investigation, including civil penalties under 26 U.S.C. § 6651 et seq. (1970), which, if based on failure to file a return, filing of a fraudulent return, or on a willful attempt to evade tax, could be assessed at any time, without limitation, under 26 U.S.C. § 6501 (1970).
 
 
 33
 Defendants have also alleged that the investigation of defendant-corporation was assigned to an IRS Special Agent and was being conducted by the IRS intelligence division at the time the summons was issued. They contend that this is evidence that the summons was issued for criminal purposes. They further allege that in a conversation with agents who were members of the intelligence division, defense counsel was informed that the agents were conducting a criminal investigation of defendant-corporation.
 
 
 34
 As we have already stated, these allegations are not sufficient, under Donaldson, to raise the issue of criminal purpose. However, we find that these allegations, although not very strong, sufficiently raise the possibility that the IRS agents charged with the investigation of defendant-corporation had no intention of pursuing any civil remedies as to bring into question their good faith. We therefore hold that the district court should conduct a hearing concerning the issues raised by these allegations.
 
 3. Good Faith harassment
 
 35
 Defendants alleged in pertinent part, that Agent Hemphill: (1) harassed the wife of one of the officers of defendant-corporation by demanding her employment records from her employer; (2) subpoenaed personal records of defendant-corporation's officers and their families from certain banks; (3) contacted business customers of defendant-corporation "thereby jeopardizing" the corporation's commercial relationships; and (4) demanded photographs of defendant-corporation's employees from the United States Army, one of the corporation's customers. We must decide whether these allegations raised a sufficient possibility that Agent Hemphill abused his authority as to require an evidentiary hearing.
 
 
 36
 Unquestionably the broad investigatory powers of IRS agents will occasionally be subject to abuses. The courts should be attentive to circumstances where such abuses are likely to have taken place. Although the allegations are indeed thin, we think they were sufficient to require the district court to hear the evidence. Airing them will at least be healthy because it will permit a resolution of the charges. Whether these allegations, if proved, are sufficient without more to warrant a finding of bad faith within the meaning of Donaldson, we leave to the district court.
 
 4. Prior Inspection and Possession
 
 37
 In alleging before the district court that the IRS had already made one inspection of defendant-corporation's books for the years in question and that the Service presumptively had in its possession the information now sought, defendants apparently operated on the theory that a prior inspection had taken place in the course of several meetings conducted by a former IRS agent with defendant-corporation's accountant. Defendants alleged that the accountant had custody of the corporation's books of record.
 
 
 38
 Plaintiffs, however, claimed before the district court that defendants' allegations were only sufficient to raise the possibility that third parties had been previously examined with respect to the tax liability of the corporation for the years in question. Such prior examinations, they claimed, would not have made a subsequent examination of defendant-corporation a "second inspection."
 
 
 39
 The district court adopted plaintiffs' position, holding that a prior inspection had not taken place. In addition, the court discounted the possibility that the information now sought is already in the possession of the IRS, stating: "It seems unlikely that the IRS would seek to enforce an administrative summons if it already possessed the information sought to be revealed by execution of the summons."
 
 
 40
 We hold that the district court erred in reaching this conclusion which we find to be based on conjecture rather than evidence without first conducting an evidentiary hearing. We believe defendants' allegations sufficiently raised the possibility that enforcement of the summons would result in a second inspection, or that plaintiffs already have possession of the information now sought, as to warrant further judicial inquiry.
 
 
 41
 A prior inspection of the corporation's books as was alleged by defendants, even if it took place while the books were in the hands of third parties would, we think, be sufficient to activate Section 7605(b).[9] We therefore hold that the district court should conduct a hearing on both the "second inspection" and "possession" issues as well as on the issue of the legitimate purpose of the investigation.
 
 
 42
 If defendants are able to demonstrate at that hearing that significant issues of fact remain unresolved, further proceedings will be in order. However, such further proceedings would only be appropriate were defendants able to make a substantial showing that the summons was seriously defective or tainted, for example, because it "had been issued for an improper purpose such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Powell, supra, 379 U.S. at 58, 85 S.Ct. at 255.[10]
 
 
 43
 Whether further proceedings will be necessary must be left to the later determination of the district court in the light of the evidence presented and with due regard for the summary nature of the action. We do not now need to decide whether the denial of discovery was error since defendants will be free to make such application at the conclusion of the evidentiary hearing if they feel that the existing record is materially inadequate on any pertinent issue.
 
 
 44
 We have reached our result despite plaintiffs' claim that defendants waived their right to an evidentiary hearing because we find no such waiver.[11] It follows that defendants must be afforded a hearing as well as an opportunity, at the appropriate time, to demonstrate that discovery is necessary to a proper resolution of one or more of the issues still to be determined.
 
 
 45
 The judgment of the district court will be reversed and the case remanded for proceedings consistent with this opinion.
 
 
 
 [1]
 Although a portion of the final judgment contemplates that plaintiffs set a time for an appearance and testimony by an authorized officer or employee of defendant-corporation, it is the portion that orders the production of documents which is attacked by defendants on this appeal
 
 
 [2]
 The district court reached this conclusion despite plaintiffs' apparent willingness to proceed with an evidentiary hearing as is demonstrated by the following excerpt from the hearing transcript:
 Mr. Sevila:
 Finally, I say the Government has certainly established a need for a hearing day. The Government witnesses are present and we are ready to proceed.
 The Court:
 I don't think we need a hearing. I think this can be decided on the law.
 
 
 [3]
 Plaintiffs appear to ignore the fact that the district court did not afford defendants an opportunity to make any such showing, inasmuch as the court did not conduct an evidentiary hearing
 
 
 [4]
 However, in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534 (1970), the Court acknowledged the applicability of the Federal Rules of Civil Procedure to summons enforcement proceedings as well as, by virtue of Rule 81(a)(3), the inherent power of the district courts to limit the application of the Rules in summary proceedings. Id. at 528-9, 91 S.Ct. 534
 
 
 [5]
 See Donaldson, supra, 400 U.S. at 529, 91 S.Ct. 534, where the Supreme Court endorsed the perpetuation of summary enforcement proceedings in post-Powell cases
 
 
 [6]
 In United States v. Salter, 432 F.2d 697 (1st Cir. 1970), the First Circuit approved a procedure similar to the one urged here. See also United States v. Turner, 480 F.2d 272 (7th Cir. 1973)
 
 
 [7]
 Technically speaking, this portion of the Donaldson opinion is mere dictum. The issue before the Court in that case was whether the taxpayer had the right to intervene in a summons enforcement proceeding. In holding that the taxpayer could not intervene, the Court obviated the necessity to rule on the sufficiency of the taxpayer's claims, one of which was the criminal purposes defense. Nevertheless, we decline to follow United States v. Weingarden, 473 F.2d 454 (6th Cir. 1973) (holding that Donaldson can be read as promoting the "solely for criminal purposes" test and not the "recommendation for prosecution" test), as is urged on us by defendants, since we find Weingarden to be based on a misconstruction of the opinion in Donaldson, and since we believe that a holding of the Supreme Court, even in dictum, should not lightly be dismissed
 
 
 [8]
 They also emphasize that, by the plaintiffs' own "admission," there was no revenue agent assigned to the case when the summons was issued. The reference is to a concession by plaintiffs' counsel at oral argument before the district court. However, plaintiffs retracted this concession in their "Reply Memorandum," submitted to the district court, claiming that it was based on a misapprehension of the facts when made. Moreover, we are of the opinion that under Donaldson the mere absence of a revenue agent in an IRS investigation is insufficient to show criminal purpose. It might, however, when combined with facts more compelling than those in the case before us, be taken as demonstrating absence of a proper civil purpose in short, that the summons was issued in bad faith
 
 
 [9]
 "(b) Restrictions on examination of taxpayer. No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." 26 U.S.C. § 7605(b) (1970)
 
 
 [10]
 Thus, in United States v. Turner, supra, at 275-6, the Seventh Circuit stated: " . . . unless a summoned party can introduce some evidence supporting his allegations of bad faith at the hearing, further discovery after the hearing may be denied." (Citing United States v. Salter, supra.)
 
 
 [11]
 Although defense counsel appears to have been laboring under a misconception that defendants had a right to discovery prior to presentation of any evidence in the summons enforcement proceedings during his oral argument at the return of the Order to Show Cause, his continued requests for discovery before a hearing do not amount to a waiver of the right to a hearing as plaintiffs contend. We believe that the district court, when confronted with defendants' allegations in both the "Affirmation in Opposition" of defense counsel and in their answer, and notwithstanding defendants' requests for discovery, should have permitted the parties to put on evidence at the return of the order