540 F.2d 640
 76-2 USTC P 9601
 UNITED STATES of America and Joseph A. Dollard, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
Americo V. CORTESE, Prothonotary Court of Common Pleas,
Philadelphia County, Pennsylvania, Respondent-Appellant.
 No. 76-1474.
 United States Court of Appeals,
Third Circuit.
 Argued May 24, 1976.
Decided Aug. 10, 1976.
 
 Scott P. Crampton, Gilbert E. Andrews, Carleton D. Powell, Daniel F. Ross, Washington, D. C., Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for appellees.
 Jonathan Vipond, III, Michael L. Seabolt, Philadelphia, Pa., for appellant.
 Before SEITZ, Chief Judge, and ADAMS and HUNTER, Circuit Judges.
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 We must decide whether contingent fee agreements filed with the Prothonotary of the Court of Common Pleas under Rule 202 of that court ("Local Rule 202") are privileged as a matter of federal common law from compulsory production to the Internal Revenue Service ("IRS") under a summons issued pursuant to 26 U.S.C. § 7602.[1] On the basis of our decision also filed this day, in In re Grand Jury Impaneled January 21, 1975, 529 F.2d 543 (3d Cir. 1976), we conclude that the agreements are not privileged and accordingly will affirm the district court's order enforcing the IRS summons.
 
 
 2
 In the course of its investigation of the tax liabilities of attorney Nathan Berlant, the IRS, on October 9, 1975, issued a summons to the Honorable Americo V. Cortese, the Prothonotary of the Court of Common Pleas of Philadelphia County. The summons sought all contingent fee agreements and statements of distribution filed with the Prothonotary between 1971 and 1974 by the taxpayer or which bore his name. App. at 2a. At the time of issuance of the summons, attorneys in Philadelphia were required by Local Rule 202 to file copies of such agreements and statements with the Prothonotary.[2] Section (f) of Local Rule 202 provided that these copies "shall be impounded subject to inspection only by Order of the Court, by the client or by the Disciplinary Board of the Supreme Court of Pennsylvania." The Prothonotary refused to produce the requested records on the ground, inter alia, that they were privileged.
 
 
 3
 Proceedings to enforce the summons under 26 U.S.C. § 7604 were begun in the district court by the government on December 4, 1975. The Prothonotary moved to dismiss the summons. After a hearing on the petition to enforce the summons, and the filing of an amicus curiae brief by the Philadelphia Bar Association in support of the Prothonotary's motion to dismiss,[3] the district court, on March 31, 1976, issued an opinion and order enforcing the summons and denying the motion to dismiss. Notice of appeal was filed by the Prothonotary on April 12, 1976. Enforcement of the summons was stayed pending disposition of the instant appeal. App. at 84a. On April 28, 1976, this court expedited the appeal and listed it for disposition with In re Grand Jury Impaneled January 21, 1975, supra.
 
 
 4
 The Prothonotary contends, inter alia,[4] that contingent fee agreements filed under Local Rule 202 are privileged as a matter of federal common law from production pursuant to an IRS summons. In In re Grand Jury Impaneled January 21, 1975, supra, we assumed arguendo that as a matter of Pennsylvania law retainer agreements filed under Local Rule 202 were privileged against use in any investigation or court proceeding. We nevertheless held that any assumed state-created required reports privilege would not be recognized as a matter of federal common law so as to defeat a federal grand jury's subpoena. Enforcement of the grand jury subpoena would not, in our view, seriously frustrate the Court of Common Pleas' interest in voluntary compliance with its filing requirements. Thus, on balance we concluded that the assumed state-created privilege must yield to the grand jury's need for the information in order effectively to conduct its investigation.
 
 
 5
 We consider our decision in In re Grand Jury Impaneled January 21, 1975, supra, to control here. The scope of inquisitorial power granted the IRS Commissioner in 26 U.S.C. § 7602 is not unlike that vested in federal grand juries.[5] And for the reasons stated in our earlier decision, we do not think the Court of Common Pleas' interest in voluntary compliance will be seriously impaired by enforcement of the instant summons. To enforce a summons, the IRS must show:
 
 
 6
 (1) That the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose, (2) that the information sought is not already within the government's possession and (3) that the steps required by the Internal Revenue Code have been followed . . . .
 
 
 7
 United States v. McCarthy, 514 F.2d 368, 372 (3d Cir. 1975). The enforcement proceeding is no mere "rubber stamp approval." United States v. First National Bank, --- F.2d ---- (3d Cir. 1976); see United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975). As in In re Grand Jury Impaneled January 21, 1975, supra, the reasons generally asserted in support of federal court recognition of a state's required reports privilege are also not present here. After consideration of the asserted interests underlying Local Rule 202(f) and the federal government's interest in ensuring compliance with its tax laws, see United States v. Bisceglia, supra, we conclude that the federal interest must here prevail. See Falsone v. United States, 205 F.2d 734, 742 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953).
 
 
 8
 The district court's order shall be affirmed.
 
 
 
 [1]
 We have jurisdiction pursuant to 28 U.S.C. § 1291
 
 
 [2]
 Local Rule 202 provided, in pertinent part:
 (d) Every attorney effecting the recovery of damages for personal injuries, whether by settlement or through litigation, shall forthwith fill out, in duplicate, a statement showing in reasonable detail the disposition of the amount received. One such copy shall be delivered to the client, and the other shall be preserved by the attorney for two years following such settlement, subject to inspection by the client, by the court, and by the Disciplinary Board of the Supreme Court of Pennsylvania, its staff and employees. Such statements accumulated by an attorney ceasing to practice may be turned over to the then chairman of such Board.
 (e) Agreements between attorney and client relating to compensation wholly or partly on a contingent basis shall contain a statement of the name, address and relationship of the person who recommended the client.
 (f) Every attorney who enters into an agreement with a client with reference to legal representation for damages for death or personal injuries sustained either at common law or under the provisions of the Workmen's Compensation Act, or for damages in land condemnation proceedings, under the terms of which agreement the attorney's compensation is wholly or partly on a contingent basis, shall file with the Prothonotary:
 (1) Within 20 days of the date of its execution, an executed copy of the agreement; and
 (2) Within 20 days of the final disposition of the case, a statement showing in reasonable detail the disposition of the amount received.
 The Prothonotary shall assign to each agreement a number and shall make a record thereof in a separate docket. The Prothonotary shall record in the same docket the closing statement above referred to. The copy of the agreement, the copy of the closing statement and the docket shall be impounded subject to inspection only by Order of the Court, by the client or by the Disciplinary Board of the Supreme Court of Pennsylvania.
 App. at 25a-26a. On May 20, 1976, the Board of Judges of the Court of Common Pleas of Philadelphia County repealed actions (e) and (f). For the reasons stated in In re Grand Jury Impaneled January 21, 1975, 529 F.2d 543 (3d Cir. 1976), we do not consider that repeal to affect the instant appeal.
 
 
 [3]
 On January 7, 1976, the district court entered an order enforcing the summons. However, that order was stayed to permit the Philadelphia Bar Association additional time in which to file its amicus brief. Submitted with the Bar Association's brief was an affidavit of the Honorable Edward J. Bradley, President Judge of the Court of Common Pleas, setting forth his views on the confidentiality provision of Local Rule 202. App. at 51a-53a. In President Judge Bradley's opinion, the assurance of confidentiality was necessary to ensure voluntary compliance with the filing requirement and compulsory production of the records to the IRS would frustrate the operation of Local Rule 202. Id. at 52a
 
 
 [4]
 The Prothonotary also argues that he was not the proper person on whom to serve the summons because he cannot produce the records, absent an order of the Court of Common Pleas. We rejected that argument in In re Grand Jury Impaneled January 21, 1975, supra
 Additionally, the Prothonotary contends that as a matter of comity the district court should have deferred enforcement of the subpoena pending an appropriate petition to the Court of Common Pleas for release of the requested records. We note initially that the Prothonotary did not raise this issue below and the district court did not discuss it in his opinion. Moreover, it appears that the IRS contacted President Judge Bradley of the Court of Common Pleas on July 2, 1975 and requested access to the records sought in the instant summons. President Judge Bradley refused the IRS request for access to the records on July 15, 1975. Appellees' Supplemental Memorandum at Ex. B (Affidavit of Robert M. McKee, IRS Special Agent, May 10, 1976). Finally, for the reasons stated in our decision in In re Grand Jury Impaneled January 21, 1975, supra, we do not consider deferral to have been necessary here.
 
 
 [5]
 United States v. Matras, 487 F.2d 1271, 1274 (8th Cir. 1973); United States v. Widelski, 452 F.2d 1, 4 (6th Cir. 1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); Falsone v. United States, 205 F.2d 734, 742 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); see United States v. Bisceglia, 420 U.S. 141, 147, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); United States v. Powell, 379 U.S. 48, 57, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)